IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

ANTHONY ROBERT NEMETH,

                    Plaintiff,

     v.

WILLIAM ELLENA, Oregon State
Trouper; CHRIS P. BROWN, Oregon
State Police Superintendent; TIM
EVINGER, Klamath County Sheriff;
BRIAN BRYSON, Klamath County
Deputy; and KLAMATH COUNTY,
a political subdivision of the State of
Oregon,

                    Defendants.

Case No. 1:13-cv-01089-CL
OPINION AND ORDER

M. Christian Bottoms
Law Office of M. Christian Bottoms
P.O. Box 86188
Portland, Oregon 97286
       Attorney for plaintiff

Ellen F. Rosenblum
Andrew D. Campbell
Kenneth C. Crowley
Oregon Department of Justice
1162 Court Street N.E.
Salem, Oregon 97301
       Attorneys for defendants William Ellena and Chris Brown

Thomas F. Armosino
Adam Zedikiah Daheim
Frohnmayer Deatherage, et al.
2592 E. Barnett Road
Medford, Oregon 97501
       Attorneys for defendants Brian Bryson, Tim Evinger, and Klamath County

CLARKE, Magistrate Judge:

Anthony Nemeth ("plaintiff") filed this action against William Ellena, Chris P. Brown, Brian Bryson, Tim Evinger, and Klamath County (collectively "defendants"), alleging numerous claims under 42 U.S.C. § 1983 and state law. Ellena and Brown move for summary judgement pursuant to Fed. R. Civ. P. 56(a). Bryson, Evinger, and Klamath County filed a separate motion for summary judgment. All parties have consented to allow a Magistrate Judge enter final orders and judgment in this case in accordance with Fed. R. Civ. P. 73 and 28 U.S.C. § 636(c). For the reasons set forth below, defendants' motions are granted and this case is dismissed.

## BACKGROUND

On July 1, 2011, plaintiff was driving on Highway 140 in Klamath County, Oregon. First Am. Compl. ("FAC") ¶ 15. Plaintiff was travelling east with three companions, each on his own motorcycle, when Oregon State Police ("OSP") Trooper Ellena noticed them. Campbell Decl. Attach. 1, at 2. Ellena was on-duty and travelling west, in a designated safety corridor and marked OSP vehicle. *Id.* The posted speed limit in this safety corridor is 55 miles per hour ("mph"). Campbell Decl. Ex. A, at 5; Chambers Decl. ¶ 4. Ellena used his radar device to measure the speed of the four motorcycles, which registered at 72 and 71 mph. Campbell Decl. Ex. A, at 5. Senior OSP Trooper David Chambers was also on-duty, independently travelling westbound on Highway 140, and observed the four eastbound motorcycles. Chambers Decl. ¶ 4. As Ellena reversed direction to pursue plaintiff, Chambers stated over the radio that "he checked the motorcycle's speeds [sic] at 71 mph." *Id.*; Campbell Decl. Ex. A, at 6.

Ellena initiated a traffic stop at approximately 7:00 p.m. for speeding in a safety corridor. Campbell Decl. Ex. A, at 5; Daheim Decl. Attach. 3, at 2.[1] "Because there were multiple

---

[1] Because counsel for Klamath County did not numeralize the attachments to his declaration, the Court refers to the page numbers assigned in the docket.

individuals and vehicles," Chambers "pulled over to assist in the traffic stop." Chambers Decl. ¶ 5. At or around the same time, Klamath County Deputy Bryson arrived on-scene to provide cover. FAC ¶¶ 15, 17; Daheim Decl. Attach. 1, at 2, 4, 10.

The four motorcyclists pulled over and halted roughly in a line, and Ellena parked behind them. Campbell Decl. Ex. A, at 6; Campbell Decl. Ex. B, at 6:59-7:01. Ellena first approached the rear-most motorcyclist, Gerald Verboomen, and asked if he had any weapons on him; Verboomen responded "no." *Id.* When asked for his driver's license, Verboomen indicated it was in an unlocked cargo box on his motorcycle, along with two loaded firearms. *Id.* Ellena safely removed the firearms and retrieved Verboomen's driver's license. *Id.* While Verboomen had a California concealed weapon permit, he did not possess a license to carry a concealed firearm in the State of Oregon in violation of Or. Rev. Stat. § 166.250. *Id.*

Ellena then moved on to Thomas Mattern, asking if he had any weapons; "Mattern replied, 'No sir . . . pocket knife.'" Campbell Decl. Ex. A, at 6; Campbell Decl. Ex. B, at 7:02. Ellena obtained Mattern's divers' license, made some cursory inquiries about objects in plain view on the motorcycle, and approached the next rider – plaintiff –who was wearing a Gypsy Joker Motorcycle Club vest, including a "1 %er" patch. FAC ¶ 15; Campbell Decl. Ex. B, at 7:02; Campbell Decl. Attach. 3, at 4. Ellena had specific training regarding the Gypsy Joker Motorcycle Club that he was cognizant of during this stop. Campbell Decl. Ex. A, at 6; Campbell Decl. Attach. 1, at 3-4.

After reiterating that the reason for the traffic stop was speeding, Ellena asked plaintiff if he had any weapons. Campbell Decl. Ex. A, at 6; Campbell Decl. Ex. B, at 7:03-04. Plaintiff responded that he was carrying "a Beretta handgun in his left vest pocket and a Smith and Wesson revolver in his left side saddle bag." *Id.* Ellena informed plaintiff that, "for my safety,"

he was going to remove the loaded firearms. *Id.* Plaintiff did not object and was cooperative at all relevant times. *Id.* Once Ellena safely removed the firearm from plaintiff's person and obtained his drivers' license, plaintiff, at Ellena's request, voluntarily stepped away from the saddlebag containing the remaining firearm. Campbell Decl. Ex. B, at 7:06. This permitted Ellena to turn his attention to the lead rider, Greg Reid, who was also wearing a Gypsy Joker Motorcycle Club vest. *Id.*; Campbell Decl. Ex. A, at 7. Although Reid was confrontational, Ellena obtained his drivers' license and safely remove multiple knives. Campbell Decl. Ex. A, at 4, 7; Campbell Decl. Ex. B, at 7:04-10.

Ellena went back and removed the remaining firearm from the saddlebag of plaintiff's motorcycle, at which point he noticed that it bore a "Department of Corrections" emblem. Campbell Decl. Ex. A, at 7; Campbell Decl. Ex. B, at 7:09. At 7:15 p.m., Ellena requested that OSP dispatch "perform a stolen check"; he told the dispatcher, via radio, the serial number of the firearm and its make/caliber. Campbell Decl. Ex. A, at 7; Campbell Decl. Ex. B, at 7:15. Approximately two minutes later the OSP dispatcher informed Ellena that the firearm was registered as stolen. Campbell Decl. Ex. B, at 7:17. The status of the stolen firearm was later confirmed by the OSP and Josephine County. Campbell Decl. Exs. C-D. After "advis[ing] [him] that the revolver he possessed was reported stolen," Ellena Mirandized plaintiff and placed him under arrest Possession of a Stolen Firearm pursuant to Or. Rev. Stat. § 164.055(d). Campbell Decl. Ex. A, at 1, 7; Campbell Decl. Ex. B, at 7:18. After indicating that he understood his rights, plaintiff explained that "he bought the revolver [in question] from a guy . . . approximately 8 months ago" for $150, despite the fact that he believed it to be worth $500, and did not know it was stolen. Campbell Decl. Ex. A, at 7. Around 7:25 p.m., after being placed in behind-the-back

handcuffs and searched, plaintiff was moved into the backseat of Ellena's patrol car. *Id.*; Campbell Decl. Ex. B, at 7:25; Chambers Decl. ¶ 8.

Ellena re-contacted Mattern. *Id.*; Campbell Decl. Ex. A, at 7. He discovered that Mattern, like Verboomen, had lied about not possessing any firearms. Campbell Decl. Ex. A, at 7; Campbell Decl. Ex. B, at 7:30. In fact, during the entire length of the stop, Mattern had a loaded firearm concealed in his left boot. *Id.* Mattern did not have a valid Oregon concealed weapon permit, such that Ellena seized this additional firearm and arrested Mattern for Unlawful Possession of a Firearm pursuant to Or. Rev. Stat. § 166.250. Campbell Decl. Ex. A, at 2, 7; Campbell Decl. Ex. B, at 7:33-35.

At 7:50 p.m., Chambers allowed plaintiff to step out of the back seat of the patrol vehicle for approximately two minutes because he was "voicing discomfort." Chambers Decl. ¶ 7; Campbell Decl. Ex. B, at 7:50, Track 2. In addition, Chambers moved plaintiff's handcuffs so that they were in front of his body "for the sole purpose of increasing his comfort." Chambers Decl. ¶¶ 8-9. He also "inquired if [plaintiff] needed an ambulance [but plaintiff declined, stating only that] his back hurt." *Id.* at ¶ 7; Campbell Decl. Ex. B, at 7:50, Track 2. However, plaintiff later requested his narcotic pain medication, which was located on his motorcycle. Daheim Decl. Attach. 2, at 2. One or more OSP Troopers denied this request. *Id.* at 2-4.

Around 8:10 p.m., plaintiff was allowed out of the backseat of the patrol vehicle for a second time to stand and stretch. Campbell Decl. Ex. B, at 8:11, Track 2. Between approximately 8:15 p.m. and 8:20 p.m., Reid was "issued a verbal warning" for speeding, Verboomen was cited for Unlawful Possession of a Firearm, and both were "released from the scene." Campbell Decl. Ex. A, at 3-4, 7-8; Campbell Decl. Ex. B, at 7:04-10, 8:09-18. At 8:25 p.m., Mattern was placed in the backseat of the patrol car with plaintiff. Campbell Decl. Ex. B, at 8:25-26. At

Page 5 – OPINION AND ORDER

approximately 8:30 p.m., plaintiff was again allowed to step out of the patrol car to stand and stretch for five minutes. Campbell Decl. Ex. B, at 8:29-34, Track 1 & 2. At or around the same time, Bryson left the scene; he did not speak to plaintiff, perform any investigation, make any arrests, or take custody of any property. Daheim Decl. Attach. 1, at 2-8. At approximately 8:45 p.m., the towing company arrived to remove plaintiff's and Mattern's motorcycles. Campbell Decl. Ex. B, at 8:46.

Almost immediately thereafter, Ellena began transporting plaintiff and Mattern to the Klamath County Jail; they arrived at approximately 9:35 p.m. *Id.* at 8:48-9:33; Campbell Decl. Ex. A, at 8. At some unspecified time after his arrival, plaintiff again requested his narcotic medication or, alternatively, to be taken to a doctor. Daheim Decl. Attach. 1, at 3. This request was denied and plaintiff did not receive any medical attention while being detained; he was released on bail at approximately 12:30 a.m. on July 2, 2011. Daheim Decl. Ex. 1. On August 24, 2011, the Klamath County District Attorney's Office dismissed the charges brought against plaintiff. FAC ¶ 25. Plaintiff subsequently "tried to get his firearms back [but] was returned two holsters and one firearm"; he was informed that the second gun "had been returned to its 'rightful owner.'" *Id.* at ¶ 26.

On June 27, 2013, plaintiff filed a complaint against Ellena, OSP Superintendent Brown, Bryson, Klamath County Sheriff Evinger, and Klamath County, asserting 42 U.S.C. § 1983 claims for: (1) deprivation of his Fourth and Fourteenth Amendment rights for illegal search and seizure; (2) deprivation of his Fourth and Fourteenth Amendment rights for false arrest/malicious prosecution; (3) deprivation of his First Amendment rights in relation to his speech and association with the Gypsy Joker Motorcycle Club; (4) deprivation of his Fourteen Amendment rights for failure to provide adequate medical care while in custody; (5) supervisory

Page 6 – OPINION AND ORDER

liability/defective policy maker; and (6) municipal liability. Plaintiff also alleges coextensive state law claims for false arrest, false imprisonment, and malicious prosecution, as well as an Oregon common law conversion claim. Defendants waived service of process in September 2013. Waiver of Service of Summons (Sept. 16, 2013); Acceptance/Acknowledgment of Service of Complaint (Sept. 30, 2013).

In November 2014, defendants moved for summary judgment. On February 17, 2015, plaintiff responded to defendants' motions.[2] Oral argument was held on March 11, 2015, however, plaintiff's counsel neglected to appear. Accordingly, the Court notified the parties that defendants' motions "would be ruled on by the briefs that have been filed." Minute Order (Mar. 11, 2015).

### STANDARD

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits, if any, "show that there is no genuine dispute as to any material fact and that the [moving party] is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). Substantive law on an issue determines the materiality of a fact. *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). Whether the evidence is such that a reasonable jury could return a verdict for the nonmoving party determines the authenticity of a dispute. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The moving party has the burden of establishing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party shows the absence of a genuine issue of material fact, the nonmoving party must go beyond the pleadings and identify facts which show a genuine issue for trial. *Id.* at 324. Special rules of construction

---

[2] Plaintiff filed separate, but identical, oppositions to defendants' motions. *See generally* Pl.'s Resp. to OSP Defs.' Mot. Summ. J.; Pl.'s Resp. to Klamath County Defs.' Mot. Summ. J.

apply when evaluating a summary judgment motion: (1) all reasonable doubts as to the existence of a genuine issue of material fact should be resolved against the moving party; and (2) all inferences to be drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party. *T.W. Elec.*, 809 F.2d at 630.

## DISCUSSION

This dispute centers on whether defendants' conduct violated plaintiff's constitutional rights. Defendants argue that summary judgment is warranted because the search and seizure were supported by probable cause, there is no evidence of a further significant injury or the unnecessary infliction of pain, and plaintiff did not engage in any protected expression. In addition, all individually named defendants assert that they are entitled to qualified immunity in relation to plaintiff's federal claims because their conduct was reasonable. Defendants also contend that plaintiffs' state law claims are time-barred by the Oregon Torts Claims Act's ("OTCA") notice requirement and statute of limitations.

I.    Preliminary Matter

The Court must clarify two issues prior to reaching the substantive merits of defendants' motions. First, as alleged in the complaint, plaintiff's Fourth Amendment claims are premised exclusively on defendants' allegedly unlawful search and seizure. *See generally* FAC. Yet, with the exception of one sentence related to insufficient medical care,[3] the entirety of plaintiff's responsive briefs, which contain approximately two pages of legal argument, are devoted to

---

[3] Plaintiff's sole assertion concerning medical treatment – i.e. that "[a]ll law enforcement at the scene or at the jail had a duty to provide [him with] medical attention" – is overly broad. Pl.'s Resp. to OSP Defs.' Mot. Summ. J. 6; *see also* OSP Defs.' Reply to Mot. Summ. J. 4 ("law enforcement has no obligation to provide medical care for any and all physical ailments [that] an arrestee may complain about [such as] headaches, exhaustion, [or] a bump on a knee [and the case cited to by plaintiff in support of this proposition is inapposite as it addressed] whether the constitution required [a] municipality [to] pay a hospital for treating someone that the municipal police injured") (citation omitted).

Page 8 – OPINION AND ORDER

defendants' allegedly excessive use of force. *See, e.g.*, Pl.'s Resp. to OSP Defs.' Mot. Summ. J. 5-7. Because he has not moved for leave to file a second amended complaint, and there is currently no excessive force claim alleged in the FAC, plaintiff's oppositions are immaterial to the issues presently before the Court. *See Wasco Prods., Inc., v. Southwall Techs., Inc.*, 435 F.3d 989, 992 (9th Cir.), *cert. denied*, 549 U.S. 817 (2006) ("summary judgment is not a procedural second chance to flesh out inadequate pleadings") (citation and internal quotations omitted); *see also Navajo Nation v. U.S. Forest Serv.*, 535 F.3d 1058, 1080 (9th Cir. 2008), *cert. denied*, 556 U.S. 1281 (2009) ("our precedents make clear that where, as here, the complaint does not include the necessary factual allegations to state a claim, raising such claim in a summary judgment motion is insufficient to present the claim to the district court"). As a result, plaintiff failed to adequately address defendants' arguments regarding dismissal. *See Bojorquez v. Wells Fargo Bank, NA*, 2013 WL 6055258, *5 (D.Or. Nov. 7, 2013) ("[i]f a party fails to counter an argument that the opposing party makes in a motion, the court may treat that argument as conceded") (citation and internal quotations and brackets omitted).

Second, beyond plaintiff's conclusory assertions, the record does not contain any evidence of the most extreme instances of alleged police misconduct.[4] In fact, plaintiff's oppositions do not refer to any evidence of record, except in a single instance; they cite to "Nemeth Deposition p. 111-38" is support of the contention that, "[u]pon arrival at the jail,

---

[4] Plaintiff's lawsuit is based on the following facts: (1) defendants "executed a planned stop of members of the Gypsy Joker Motorcycle Club"; (2) one of the officers at the scene "pulled out his gun and pointed it at the motorcyclists"; (3) "[d]efendants refused to leave [his] motorcycle with Mrs. Nemeth, even though she was the lawful owner of the motorcycle" and on scene; (4) he "fell out of the car when they got to the jail" and was "kicked [by Ellena and ordered to] 'Get up!'"; (5) he "endured several days of intense discomfort [and] emotional damage as a result of his interaction with Defendants"; and (6) he "had not committed any crime and was being detained for a traffic manner." Pl.'s Resp. to OSP Defs.' Mot. Summ. J. 3-6 (citing FAC ¶¶ 15-28).

[plaintiff was] thrown to the ground." Pl.'s Resp. to OSP Defs.' Mot. Summ. J. 6. However, as

OSP defendants correctly observe, plaintiff did "not filed this portion of the deposition transcript

as an exhibit [and] has failed to properly provide any authentication."[5] OSP Defs.' Reply to Mot.

Summ. J. 2.

In other words, plaintiff did not submit any evidence, admissible or otherwise, in

conjunction with his opposition. Moreover, defendants' evidence blatantly contradicts plaintiff's

bare allegations. *See, e.g.*, Campbell Decl. Exs. A-D; Chambers Decl. ¶¶ 4-9. For instance, the

video and audio recording of the event demonstrates that defendants did not point a gun at

plaintiff or engage in any other improper use of force. *See generally* Campbell Decl. Ex. B.

Thus, plaintiff's allegations of wrongdoing are without support and therefore insufficient to

create a genuine issue of material fact. *See Celotex*, 477 U.S. at 322 (summary judgment should

be entered against "a party who fails to make a showing sufficient to establish the existence of an

element essential to that party's case, and on which that party will bear the burden on proof at

trial"); *see also Hernandez v. Spacelabs Med. Inc.*, 343 F.3d 1107, 1116 (9th Cir. 2003)

("conclusory allegations, unsupported by facts, are insufficient to survive a motion for summary

judgment") (citation omitted). On this basis alone, defendants are entitled to summary judgment.

II.    Federal Claims

To prevail on a claim under 42 U.S.C. § 1983, a plaintiff must demonstrate that: (1) the

conduct complained of deprived him or her of an existing federal constitutional or statutory right;

---

[5] For these reasons, OSP defendants "object to this portion of Plaintiff's 'evidence.'" OSP Defs.'
Reply to Mot. Summ. J. 2. Despite being permitted to do so, plaintiff did not respond to this
evidentiary objection or otherwise produce the cited to deposition portions. *See* LR 56-1(b) ("[i]f
an evidentiary objection is raised by the moving party in its reply memorandum, the non-moving
party may file a surreply memorandum"). In any event, OSP defendants' objection is denied as
moot because the Court did not rely on this evidence in resolving whether summary judgment
was appropriate. *Perez–Denison v. Kaiser Found. Health Plan of the N.W.*, 868 F.Supp.2d 1065,
1088-89 (D.Or. 2012).

and (2) the conduct was committed by a state actor or a person acting under color of state law. *L.W. v. Grubbs*, 974 F.2d 119, 120 (9th Cir. 1992), *cert. denied*, 508 U.S. 951 (1993). A federally recognized liberty interest to be free from unreasonable searches and seizures exists under the Fourth Amendment. *Florida v. Jimeno*, 500 U.S. 248, 250 (1991). Likewise, the First Amendment protects expressive conduct and expressive association. *Spence v. Washington*, 418 U.S. 405, 409-11 (1974) (per curiam); *Roberts v. U.S. Jaycees*, 468 U.S. 609, 617-18 (1984). A person detained in police custody also "has a constitutionally protected right to receive needed medical care protected by the substantive due process clause of the Fourteenth Amendment."[6] *Hudson v. City of Salem*, 2009 WL 1227770, *10 (D.Or. May 1, 2009) (citing *City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244-45 (1983); *Carnell v. Grimm*, 74 F.3d 977, 979 (1996)).

It is undisputed that defendants qualify as state actors for the purposes of 42 U.S.C. § 1983. Therefore, this case initially hinges on whether Ellena or Bryson, the two on-scene law enforcement officers, violated plaintiffs' constitutional rights or are otherwise entitled to qualified immunity. Qualified immunity shields government officials from civil liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) (citations omitted). To ascertain if a government actor is entitled to qualified immunity, the court evaluates whether: (1) the alleged misconduct violated a right; and (2) that right was clearly established at the time of the alleged misconduct. *Pearson v. Callahan*, 555 U.S. 223, 236

---

[6] Where "a particular constitutional amendment provides an explicit textual source of constitutional protection that amendment, not the more generalized notion of substantive due process must be the guide for analyzing these claims." *Pelster v. Walker*, 185 F.Supp.2d 1185, 1189 (D.Or. 2001) (citation and internal quotations and ellipses omitted). As such, plaintiff's claims are not cognizable under the Fourteenth Amendment to the extent they are premised on rights already secured by the Fourth Amendment. *See, e.g.*, FAC ¶¶ 41, 46, 56 (alleging that his Fourteenth Amendment rights were violated because defendants performed a search and arrest without probable cause).

(2009). Thus, if the government actor reasonably believed that his or her conduct complied with the law, summary judgment based on qualified immunity is appropriate. *Id.* at 244.

A.   OSP Defendant Ellena

Plaintiff alleges four federal claims against Ellena: illegal search and seizure, false arrest/malicious prosecution, violation of rights to free speech and free association, and failure to provide medical care.

i.   Illegal Search and Seizure

A traffic stop "constitutes a seizure under the Fourth Amendment and, as a result, an officer must have reasonable suspicion before detaining a motorist." *DeMartino v. City of Stayton*, 2013 WL 596141, *3 (D.Or. Feb. 14, 2013) (citations omitted). Reasonable suspicion exists "when the detaining officer is aware of specific articulable facts, together with rational inferences from those facts, that reasonably warrant suspicion that the law is being broken." *United States v. Collom*, 614 F.2d 624, 628 (9th Cir. 1979), *cert. denied*, 446 U.S. 923 (1980) (citation and internal quotations omitted). Once a legal stop is effectuated, an officer may ask questions unrelated to the stop or pat down the driver "for weapons if the officer reasonably concludes that the driver might be armed and presently dangerous." *Arizona v. Johnson*, 555 U.S. 323, 331 (2009).

It is undisputed that the proffered reason for the stop was because Ellena and Chambers, independent of one another, observed plaintiff to be travelling at approximately 71 mph in a designated safety corridor, in violation of Oregon Revised Statutes Chapter 811. Campbell Decl. Ex. A, at 5-6; Chambers Decl. ¶ 4; *see also* Or. Rev. Stat. §§ 811.100, 811.105, 811.111, 811.180, 811.483 (making it unlawful to drive more than 55 mph in a designated safety corridor). Indeed, there is no evidence in the record indicating that plaintiff was not speeding at

the time of the stop. *See* Chambers Decl. ¶ 4 (Chambers' "radar unit measured [plaintiff's] speed at 71 [mph]"); Campbell Decl. Ex. A, at 5 (Ellena "calibrated [his] front moving radar and observed a display speed of 72 and 71 mph"); Campbell Decl. Ex. B, at 8:16 (Reid remarking that they had been going 62 mph but inadvertently accelerated while travelling along the downgrade). Given this unrefuted evidence, plaintiff's deposition testimony – i.e. that the stop was pretextual because he "was not impending the normal traffic [and did not think he was] going any faster than 60" – does not create a genuine issue of material fact, especially because he admitted to not "look[ing] at his speedometer while . . . driving down the road." Campbell Decl. Attach. 3, at 2-3; *see also* Or. Rev. Stat. § 811.109 (a penalty for a speed violation may be imposed if the driver is travelling as little as "[o]ne [mph] in excess of the speed limit"). Accordingly, Ellena had reasonable suspicion to initiate a stop due to speeding.

As a result, Ellena was permitted to make an inquiry about any subject, provided that inquiry did not measurably extend the traffic stop. [7] *Arizona*, 555 U.S. at 333; *see also* Or. Rev. Stat. § 810.410(3)(d) (authorizing police officers to "make an inquiry to ensure the safety of the officer, the person stopped or other persons present, including an inquiry regarding the presence of weapons"). His questioning of Verboomen, and each subsequent motorcyclist, about firearms was therefore lawful.

The Court also finds that Ellena's search of plaintiff was lawful. As OSP defendants note, "Ellena had four motorists that had to be contacted, identified, and addressed, just to resolve the traffic violation . . . Verboom[e]n's denial [regarding his possession of firearms] almost

---

[7] Although not explicitly challenged by plaintiff, the Court finds that the stop did not last an unreasonable amount of time. *See* Campbell Decl. Ex. B, at 6:59-7:18 (less than twenty minutes elapsed between Ellena's initiation of the stop and plaintiff's arrest); *see also DeMartino*, 2013 WL 596141 at *5 ("even if the stop lasted for twenty minutes, the Court cannot conclude that it was unreasonable, especially given that the stop was initially extended due to plaintiff's failure to cooperate").

immediately proved to be false; meaning Ellena was quickly confronted [by] a driver [with] hide[n] weapons." OSP Defs.' Mot. Summ. J. 7. These circumstances, in conjunction Ellena's training (i.e. that the Gypsy Joker Motorcycle Club was an "outlaw motorcycle club" whose members were often armed) and experiential knowledge (i.e. that local Gypsy Joker Motorcycle Club members had recently engaged in violent criminal conduct), it was reasonable for Ellena to conclude that others in Verboomen's party might be armed and presently dangerous. Campbell Decl. Attach. 1, at 3-4; *see also Johnson*, 555 U.S. at 331 ("[t]he government's legitimate and weighty interest in officer safety . . . outweighs the *de minimis* additional intrusion of requiring a driver, already lawfully stopped, to [answer questions,] exit the vehicle[,] [or] be patted down for weapons") (citations and internal quotations omitted); *State v. Redmond*, 114 Or.App. 197, 201, 834 P.2d 516 (1992) (search was lawful where the officer possessed a "generalized understanding of the practices of motorcycle club members" and "he saw that defendant was armed with a knife").[8]

Finally, once plaintiff informed Ellena that he was carrying loaded firearms, Ellena was entitled to seize those firearms "in order to avoid any possibility that [plaintiff] would use [them] against [him]." *United States v. Willis*, 431 F.3d 709, 717 (9th Cir. 2005); *see also* Campbell

---

[8] Further, as discussed in section II(A)(ii), plaintiff's arrest was lawful, such that another valid basis existed for Ellena's search. *See Mason v. Johnston*, 2001 WL 34042618, *7 (D.Or. May 11, 2001) ("[a] search incident to a lawful arrest is a well-established exception to the warrant requirement which may entail both a search of the arrestee and a search of the area within the control of the arrestee") (citing *United States v. Robinson*, 414 U.S. 218, 224 (1973)); *see also United States v. Smith*, 389 F.3d 944, 951 (9th Cir. 2004), *cert. denied*, 544 U.S. 956 (2005) ("when an arrest follows quickly on the heels of the search, it is not particularly important that the search preceded the arrest rather than vice versa") (citation and internal quotations omitted).

Decl. Ex. A, at 6 (Ellena explaining to plaintiff that he was seizing the firearms "for my safety").[9]

In sum, based on the totality of the circumstances, Ellena's actions did not violate plaintiff's Fourth and Fourteenth Amendment rights. Regardless, even if plaintiff could establish a violation of such rights, Ellena would be entitled to qualified immunity under the undisputed facts, as the Court cannot conclude that Ellena's conduct was unreasonable under the circumstances. *See Malley v. Briggs*, 475 U.S. 335, 341 (1986) (qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law"). OSP defendants' motion is granted as plaintiff's 42 U.S.C. § 1983 illegal search and seizure claim.

      ii.    False Arrest/Malicious Prosecution

"A person is seized by the police and thus entitled to challenge the government's action under the Fourth Amendment when the officer, by means of physical force or show of authority, terminates or restrains his freedom of movement, through means intentionally applied." *Brendlin v. California*, 551 U.S. 249, 254 (2007) (emphasis and internal citations and quotations omitted). Nevertheless, a warrantless arrest "does not violate the Fourth Amendment if the officers had probable cause." *Picray v. Sealock*, 138 F.3d 767, 770 (9th Cir. 1998) (citation omitted). Probable cause exists "if the available facts suggest a fair probability that the suspect has committed a crime." *United States v. Hartz*, 458 F.3d 1011, 1018 (9th Cir. 2006) (citation and internal quotations omitted). "In order to prevail on a § 1983 claim of malicious prosecution, a plaintiff must show that the defendants prosecuted [him] with malice and without probable cause, and that they did so for the purpose of denying [him] equal protection or another specific

---

[9] Plaintiff does not raise the "taking [of his] motorcycle" in relation to his federal claims; he challenges only the seizure of his firearms. *Compare* FAC ¶¶ 40-44, *with id.* at ¶¶ 96-100.

constitutional right." *Awadby v. City of Adelanto*, 368 F.3d 1062, 1067 (9th Cir. 2004) (citation and internal quotations omitted).

In this case, Ellena's lawful search, and subsequent investigation, revealed that one of plaintiff's firearms was reported stolen from the Josephine County Department of Corrections. Campbell Decl. Ex. A, at 7; Campbell Decl. Ex. B, at 7:09-17; *see also* Campbell Decl. Exs. C-D (OSP report confirming that the gun in plaintiff's possession was stolen). Although plaintiff remarked that he did not know the firearm was stolen, a reasonable officer under the circumstances could nonetheless have concluded that plaintiff committed a crime pursuant to Or. Rev. Stat. § 164.055(d). Indeed, the OSP confirmation report, combined with the fact that both Verboomen and Mattern made misrepresentations regarding the firearms in their possession, created a fair probability that plaintiff's claimed ignorance of the gun's status as stolen was insincere. *See* Campbell Decl. Attach. 3, at 6 (plaintiff testifying that it was reasonable for Ellena to conclude that the gun was stolen based on the OSP confirmation report); *see also State v. Gortmaker*, 60 Or.App. 723, 742-43, 655 P.2d 575 (1982), *aff'd*, 295 Or. 505, 668 P.2d 354 (1983), *cert. denied*, 465 U.S. 1066 (1984) (when a person possesses a firearm that he or she knows was taken unlawfully from another, the person is guilty under Or. Rev. Stat. § 164.055(d)).

Accordingly, Ellena's decision to arrest plaintiff and refer him for prosecution was supported by probable cause. Furthermore, there is no evidence of any malice. In fact, the video and audio recording of the stop, arrest, and ride to Klamath County Jail demonstrate Ellena treating plaintiff with professionalism and respect. *See generally* Campbell Decl. Ex. B. At no time does Ellena make any disparaging remarks about plaintiff or the Gypsy Joker Motorcycle Club. *Id.* Ellena also does not physically handle plaintiff in rough or aggressive manner. *Id.* OSP

defendants' motion is granted as to plaintiff's 42 U.S.C. § 1983 claim for false arrest/malicious prosecution.

      iii.    <u>Violation of Rights to Free Speech and Free Association</u>

      Conduct is expressive, and therefore worthy of First Amendment protection, if "[a]n intent to convey a particularized message was present, and in the surrounding circumstances the likelihood was great that the message would be understood by those who viewed it." *Spence,* 418 U.S. at 409–11. Similarly, in order to prevail on a claim for interfering with an individual's First Amendment right to associate, the group at issue must "engage in expressive activity." *Boy Scouts of Am. v. Dale,* 530 U.S. 640, 654 (2000); *see also IDK, Inc. v. Clark Cnty.,* 836 F.2d 1185, 1192 (9th Cir. 1988) ("[t]he First Amendment's freedom of association protects groups whose activities are explicitly stated in the amendment: speaking, worshiping, and petitioning the government") (citation omitted). Context is crucial when determining whether conduct rises to the level of expression for purposes of the First Amendment. *Spence,* 418 U.S. at 410.

      The Court finds that plaintiff's act of wearing a Gypsy Joker Motorcycle Club vest while driving down a rural highway does not qualify as protected speech. Critically, plaintiff did not furnish any evidence evincing that Gypsy Joker Motorcycle Club members advocate a specific political view, stand for a particular public position, are a spiritual or religious group, petition the government about anything, or otherwise imbue any particular meaning to the insignia on their vests. *See* Campbell Decl. Attach. 3, at 4-5 (plaintiff testifying that he did not know the significance of the Gypsy Joker Motorcycle Club or "[what the 13 or] 1%'r patch means . . . [they are] open to interpretation"). Thus, as OSP defendants denote, "[t]hey are simply patches that adorn a garment – not unlike a bowling league, or T-ball team, or even a brand name on a

shirt." OSP Defs.' Mot. Summ. J. 11; *see also* Campbell Decl. Attach. 3, at 4-5 (plaintiff remarking that Gypsy Joker Motorcycle Club patches are "[p]art of the costume").

Moreover, there is little likelihood that any message would be understood by those viewing plaintiff's vest and, further, the context in which plaintiff's alleged expression took place does not add any additional meaning. At all relevant times, plaintiff was riding a motorcycle down a rural highway; nothing about this act tends to give any further significance to plaintiff's vest and insignia. Therefore, plaintiff's Gypsy Joker Motorcycle Club vest or membership is not the type of expression the First Amendment was designed to protect. *See Roberts*, 468 U.S. at 655 (an organization must "engage in expressive activity that could be impaired in order to be entitled to protection"); *Blaisdell v. Frappiea*, 729 F.3d 1237, 1247 (9th Cir. 2013) (the "act of wearing . . . vests adorned with a common insignia simply does not amount to the sort of expressive conduct protected by the First Amendment") (citations and internal quotations omitted). OSP defendants' motion is granted as to plaintiff's 42 U.S.C. § 1983 First Amendment claim.

### iv.    Failure to Provide Medical Care

"[P]ersons in custody [have] the established right to not have officials remain deliberately indifferent to their serious medical needs." *Carnell*, 74 F.3d at 979. "A serious medical need is present whenever the failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain." *Lolli v. Cnty. of Orange*, 351 F.3d 410, 419 (9th Cir. 2003) (citation and internal quotations omitted). Deliberate indifference is established when a detainee shows that "the official knew of and disregarded a substantial risk of serious harm to his health or safety." *Johnson v. Meltzer*, 134 F.3d 1393, 1398 (9th Cir.), *cert. denied*, 525 U.S. 840 (1998) (citation omitted).

The record before the Court does not contain any evidence of a further significant injury. *See, e.g.*, Pl.'s Resp. to OSP Defs.' Mot. Summ. J. 4 (plaintiff's alleged injury consisted of "several days of intense discomfort"). Plaintiff was detained for less than six hours total and the majority of that time was spent in Klamath County Jail, wherein he could presumably change positions at will to accommodate his preexisting back condition. Daheim Decl. Ex. 1. During the approximately two hour period he was in the backseat of the patrol car, plaintiff was allowed to go outside three times to stand up and stretch. Campbell Decl. Ex. B, at 7:25-9:37. Further, within 30 minutes of being detained, Chambers moved plaintiff's handcuffs to the front of his body to increase his comfort. *Id.* at 7:50, Track 2; Chambers Decl. ¶¶ 6-9. Thus, although plaintiff voiced discomfort, the Court cannot conclude that merely sitting in the back of the patrol car for a discrete period of time, albeit in handcuffs and on plastic seats, resulted in further significant injury, especially where, as here, emergency medical aid was offered but declined.[10] Chambers Decl. ¶ 7; Daheim Decl. Attach. 2, at 2-3; *see also Frost v. Agnos*, 152 F.3d 1124, 1130 (9th Cir. 1998) ("[m]ere negligence in the provision of medical care . . . does not constitute a constitutional violation") (citation omitted).

Similarly, there is no evidence of an unnecessary and wanton infliction of pain. Even accepting plaintiff's allegation that defendants' refusal to administer his narcotic pain medication in the back of the patrol car resulted in significant pain, the fact remains that such detainment was required, as "there was simply nowhere else to secure him" due to the fact that he was lawfully arrested on a rural highway. OSP Defs.' Mot. Summ. J. 15; FAC ¶ 21. Additionally, the amount of time plaintiff was held in the patrol car was not unreasonable. It took approximately 50 minutes for Ellena to transport plaintiff and Mattern to Klamath County Jail; during the

---

[10] The Court also notes that, although not dispositive, plaintiff was navigating a heavy motorcycle over a curvy, rural highway at the time of his arrest.

remainder of plaintiff's confinement in the back of the patrol car, the officers on scene were questioning and processing the other motorcyclists, providing cover, or waiting for the towing company to arrive. Campbell Decl. Ex. B, at 7:25-9:37.

Lastly, there is no evidence of deliberate indifference. As denoted above, the video and audio footage of the event reveals that Ellena and Chambers treated plaintiff with respect and were generally attendant to his needs. *See, e.g., id.* at 7:50-52 (Chambers asking plaintiff whether there was anything else he could do to help plaintiff after moving his handcuffs and offering to call an ambulance; plaintiff declined, stating "I'm okay"); *id.* at 7:28 (Ellena asking plaintiff if the radio was too loud or if he was too warm, and making adjustments accordingly). Because plaintiff's substantive due process rights were not violated, OSP defendants' motion is granted as to this issue.

B.   Klamath County Defendant Bryson

The sole federal claim asserted against Bryson is for failure to provide medical care. As addressed section II(A)(iv), there is no evidence in the record of a further significant injury or the unnecessary and wanton infliction of pain. There is also no evidence that defendants acted with deliberate indifference to a serious medical need.

Furthermore, Bryson did not interact with plaintiff, such that he had no knowledge of plaintiff's underlying back impairment or need for medication. *See generally* Campbell Decl. Ex. B; *see also* Daheim Decl. Attach. 1, at 2-6 (Bryson testifying that he did not speak with or otherwise interact with plaintiff); Daheim Decl. Attach. 2, at 3-4 (plaintiff could not identify why he had named Bryson as a defendant, as he "d[id]n't remember him personally" from the stop). Bryson likewise did not conduct any investigation during the stop or make any decisions regarding plaintiff's arrest and detention. *Id.* Even assuming plaintiff's substantive due process

Page 20 – OPINION AND ORDER

rights were violated, Bryson lacked the requisite personal participation. *See Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998), *cert. denied*, 525 U.S. 1154 (1999) (for liability to attach under 42 U.S.C. § 1983, the plaintiff must establish that the defendant "was personally involved in the deprivation of his civil rights"); *see also Hopkins v. Bonvicino*, 573 F.3d 752, 770 (9th Cir. 2009), *cert. denied*, 559 U.S. 1048 (2010) (officer who "participated in neither the planning nor the execution of the unlawful search" was not an "integral participant" and therefore was not liable). Klamath County defendants' motion is granted in this regard.

     C.      Klamath County Defendant Evinger

Plaintiff alleges federal claims against Evinger for failure to provide medical care and supervisory liability/defective policy maker.

     i.      Failure to Provide Medical Care

As discussed herein, defendants did not violate plaintiff's substantive due process rights. Moreover, as with Bryson, there is no evidence demonstrating that Evinger spoke to or otherwise interacted with plaintiff, or was personally involved in making decisions related to his arrest, detention, or prosecution. *See Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) (supervisory officials "may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*") (citations omitted). Klamath County defendants' motion is granted as to plaintiff's 42 U.S.C. § 1983 claim for failure to provide medical care.

     ii.      Supervisory Liability/Defective Policy Maker

Pursuant to 42 U.S.C. § 1983, officials may be held individually liable for their own culpable action or inaction in the training, supervision, or control of subordinates. *Larez v. City of L.A.*, 946 F.2d 630, 646 (9th Cir. 1991) (citations omitted). Liability depends upon whether the supervisor "set in motion a series of acts by others, or knowingly refused to terminate a series of

acts by others, which he knew or reasonably should have known, would cause others to inflict the constitutional injury." *Blankenhorn v. City of Orange*, 485 F.3d 463, 485 (9th Cir. 2007). Plaintiff must show a causal connection between the official's failure to train or supervise and the alleged constitutional violation. *Id.*

A supervisor's subsequent "ratification" of a subordinate's conduct can also form the basis for liability under 42 U.S.C. § 1983; however, the supervisor must actually approve of the subordinate's decision and the basis for it, and be the product of a "conscious, affirmative" choice to ratify the conduct in question. *Gillette v. Delmore*, 979 F.2d 1342, 1346-47 (9th Cir. 1992), *cert. denied*, 510 U.S. 932 (1993); *see also Lytle v. Carl*, 382 F.3d 978, 987 (9th Cir. 2004) ("mere failure to overrule a subordinate's actions, without more, is insufficient to support a § 1983 [ratification] claim").

As summarized in the foregoing sections, plaintiff's First, Fourth, and Fourteenth Amendment rights were not violated. Moreover, the employee whom Evinger was purportedly supervising – i.e. Bryson – was not personally involved in the decision to stop, search, or seize plaintiff and his property, and he likewise was not an integral participant in any of those actions. As a result, Evinger cannot be liable in his supervisory capacity. *See City of L.A. v. Heller*, 475 U.S. 796, 799 (1986) (in order for liability to attach in this context, the plaintiff must, as a threshold matter, have "suffered [a] constitutional injury at the hands of the individual police officer"); *see also Jackson v. City of Bremerton*, 268 F.3d 646, 653-54 (9th Cir. 2001) ("[n]either a municipality nor a supervisor, however, can be held liable under § 1983 where no injury or constitutional violation has occurred") (citations omitted). In any event, there is no evidence before the Court that Evinger neglected to supervise or train officers about providing cover to other law enforcement agencies that have conducted a traffic stop, or knew Bryson was engaging

Page 22 – OPINION AND ORDER

in unconstitutional activity and approved of it nonetheless.[11] Klamath County defendants' motion

is granted as to this issue.

      D.     <u>OSP Defendant Brown</u>

      As with Evinger, plaintiff asserts a supervisory liability/defective policy maker claim

against Brown. Accordingly, for the reasons discussed in section II(C), OSP defendants' are

entitled to summary judgment, as there is no indication that Brown failed to provide proper

training or supervision regarding traffic stops, or ratified Ellena's allegedly unconstitutional acts.

Similarly, there is no evidence that Brown had anything to do with the stop, detention, search, or

arrest of plaintiff.

      In fact, Brown's deposition reveals that he has never had any meaningful oversight of

OSP patrol functions. *See* Campbell Decl. Attach. 2, at 2-3 (Brown explaining that was hired into

OSP as a Major, from his then-job of Douglas County Sheriff, such that he had never worked, or

been trained, as an OSP trooper; as an OSP Major, his responsibilities were: forensics, the

medical examiner's office, the fire marshal's office, communications, data systems, lottery

enforcement, tribal gaming enforcement, and mixed martial arts/boxing regulation). In other

words, Brown initially oversaw "outreach kind of functions [and] no operations internally, as far

as like patrol or criminal." *Id.* at 3. Once he was promoted to OSP Superintendent, Brown spent

his time dealing with "agency structure, agency budget, threats of layoffs and planning,"

implementing "electronic records management[,] adjust[ing] agency enterprise services," and

"interacting with the governor's office [and] with the legislators and responding to issues." *Id.* at

4; *see also id.* at 5 (plaintiff testifying that that he did not know specifically what involvement

---

[11] It appears as though Evinger is being sued solely in his official capacity, such that the claim
against him is duplicative of that asserted against Klamath County. *See Ctr. for Bio-Ethical
Reform, Inc. v. L.A. Cnty. Sheriff Dep't*, 533 F.3d 780, 799 (9th Cir. 2008) ("[w]hen both a
municipal officer and a local government entity are named, and the officer is named only in an
official capacity, the court may dismiss the officer as a redundant defendant").

Brown had in creating an alleged policy of selective enforcement against motorcycle clubs, but generally reasoning that "when you're the captain of a ship, you're responsible for the lowest member of the crew"). For this additional reason, OSP defendants' motion is granted as to plaintiff's 42 U.S.C. § 1983 supervisory liability/defective policy maker claim.

      E.    <u>Defendant Klamath County</u>

      Lastly, plaintiff alleges a "*Monell* claim" against Klamath County based on its "policy, custom or practice which promoted, allowed and/or facilitated the unconstitutional treatment [of plaintiff on] the assumption that members of the Gypsy Joker Motorcycle Club were criminals . . . when no crime had been committed." FAC ¶¶ 35-36. A political subdivision "may be held liable under section 1983 if its deliberate policy caused the violation alleged." *Blankenhorn*, 485 F.3d at 483 (citing *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 694 (1978)).

      As such, plaintiff's *Monell* claim is fatally flawed for the same reason as his supervisory liability/defective policy maker claim: plaintiff's constitutional rights have not been violated. *Jackson*, 268 F.3d at 653-54. Further, plaintiff's *Monell* claim is premised on the fact that the stop was both pretextual and unlawful. However, as discussed in section II(A), plaintiff was pulled over because he was speeding and the subsequent search of his person and motorcycle, and seizure of his firearms, was reasonable. In addition, at the time of his arrest, probable cause existed to believe that he had committed a crime pursuant to Or. Rev. Stat. § 164.055(d). Therefore, even accepting that Klamath County has policy to discriminate against motorcycle clubs, that policy was not "the moving force behind" defendants' actions. *Frank v. Cascade Healthcare Cmty., Inc.*, 2013 WL 867387, *17 (D.Or. Mar. 6, 2013) (citing *Mabe v. San Bernardino Cnty., Dep't of Pub. Soc. Servs.*, 237 F.3d 1101, 1110-11 (9th Cir. 2001)). Klamath County defendants' motion is granted at to plaintiff's 42 U.S.C. § 1983 *Monell* claim.

III.    State Claims

In addition to his federal claims, plaintiff asserts four state law claims against defendants. Dismissal of plaintiff's federal claims does not automatically deprive this Court of subject-matter. *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009). Rather, where a district court dismisses "all claims over which it has original jurisdiction," it may, in its discretion, "decline to exercise supplemental jurisdiction" over pendent state law claims. 28 U.S.C. § 1367(c)(3); *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 940 (9th Cir. 2012).

Plaintiff's lawsuit has been pending for nearly two years and he has undergone the withdrawal of several attorneys. Additionally, given that his counsel did not appear at oral argument or file a surreply brief, it appears as though plaintiff may be proceeding pro se at this point. Therefore, the Court retains jurisdiction of plaintiff's pendent state law claims in order to resolve this lawsuit in its entirety. *See Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 351 (1988) (retaining jurisdiction over pendent state law claims is appropriate where it serves the interests of efficiency and judicial economy).

A.    OTCA Notice

The OTCA provides that a plaintiff asserting state law tort claims against a public body or its employees must give notice of such claims "within 180 days after the alleged loss or injury." Or. Rev. Stat. § 30.275(2)(b). Notice can be either formal or actual. Or. Rev. Stat. § 30.275(3). Formal notice is a written communication from the plaintiff containing a "statement that a claim for damages is or will be asserted against the public body [and a] description of the time, place and circumstances giving rise to the claim." Or. Rev. Stat. § 30.275(4). Actual notice "is a communication that (1) allows the recipient to acquire actual knowledge of the time, place and circumstances that give rise to the specific claim or claims that the plaintiff ultimately

asserts; and (2) would lead a reasonable person to conclude that the plaintiff has a general intent to assert a claim." *Flug v. Univ. of Or.*, 335 Or. 540, 554, 73 P.3d 917 (2003); Or. Rev. Stat. § 30.275(6). Timely notice is a condition precedent to recovery against a public body or its employees. *Tyree v. Tyree*, 116 Or.App. 317, 320, 840 P.2d 1378 (1992), *rev. denied*, 315 Or. 644, 849 P.2d 525 (1993); Or. Rev. Stat. § 30.275(1).

On July 7, 2011, plaintiff submitted a tort claim notice to Klamath County,[12] the substantive portions of which state that "a claim for damages with be asserted [because] the County illegally withheld medications and other vital medical services when it housed and lodged [plaintiff] on July 1-2, 2011." Daheim Decl. Ex. 2. This notice did not mention any claim for false imprisonment, malicious prosecution, or conversion, and presented no facts that would permit Klamath County defendants to investigate or settle such claims. *See Leonard v. State*, 52 Or.App. 923, 928, *rev. denied*, 291 Or. 662, 639 P.2d 1280 (1981) (the purpose of the OTCA is to save needless expense and litigation by providing an opportunity for the amicable resolution of disputes, and to allow the public body to promptly and fully investigate claims and defenses).

Klamath County did not receive notice of any other state law claims "until plaintiff filed his complaint on June 27, 2013," more than 180 days after plaintiff's alleged injury. Klamath County Defs.' Mot. Summ. J. 21; *see also* Or. Rev. Stat. § 30.275(3) (the "[c]ommencement of an action" is sufficient to provide OTCA notice only if it is filed within 180 dates of the alleged loss or injury). As such, plaintiff failed to furnish timely notice of his for false imprisonment, malicious prosecution, and conversion claims against Bryson and/or Klamath County. *Shepard v. City of Portland*, 829 F.Supp.2d 940, 959 (D.Or. 2011). Klamath County defendants' motion is granted in this regard.

---

[12] OSP defendants do not raise any issues concerning the OTCA notice requirement. *See generally* OSP Defs.' Mot. Summ. J.; OSP Defs.' Reply to Mot. Summ. J.

B.    Statute of Limitations

Lawsuits asserting state law claims against a public body or official acting within the scope of his or her employment "shall be commenced within two years after the alleged loss or injury." Or. Rev. Stat. § 30.275(9); *see also Walker v. Armco Steel Corp.*, 446 U.S. 740, 751 (1980) ("state law determines when an action is commenced for statute of limitations purposes"). An action is not commenced under Oregon law for statute of limitation purposes until "the complaint is filed, and the summons served on the defendant." Or. Rev. Stat. § 12.020(1). If service is completed within 60 days of the filing of the complaint, the action is "deemed to have been commenced upon the date on which the complaint in the action was filed." Or. Rev. Stat. § 12.020(2).

Plaintiff had actual knowledge of his alleged injury at the time it transpired, such that his claims accrued no later than July 2, 2011. FAC ¶ 15; Daheim Decl. Ex. 2; *see also Phelps v. Wyeth, Inc.*, 2014 WL 4839808, *4 (D.Or. Sept. 26, 2014) ("a claim accrues when a plaintiff knows or should know of the potential serious injury and the defendant who caused such injury") (citing *T.R. v. Boy Scouts of Am.*, 344 Or. 282, 294-96, 181 P.3d 758 (2008)). Accordingly, the statute of limitations expired on July 2, 2013. Although plaintiff filed his complaint on June 27, 2013, service was not completed until nearly three months later, in September 2013. *See* Klamath County Defs.' Mot. Summ. J. 22 (Klamath County defendants "waived service [on] September 16, 2013"); OSP Defs.' Mot. Summ. J. 16 (OSP defendants "waived service on September 30, 2013"). While the Court granted plaintiff extensions of time to complete service under Fed. R. Civ. P. 4(m), such extensions did not toll the deadline under Or. Rev. Stat. § 12.020. *Foster v. Cnty. of Lake*, 2007 WL 2138610, *2 (D.Or. July 24, 2007); *see also Torre v. Brickey*, 278 F.3d 917, 919 (9th Cir. 2002) (per curium) ("Rule 4(m) merely sets a procedural

maximum time frame for serving a complaint, whereas Or. Rev. Stat.§ 12.020 is a statement of a substantive decision by that State that actual service on, and accordingly actual notice to, the defendant is an integral part of the several policies served by the statute of limitations") (citations and internal quotations and brackets omitted).

Because summonses were served on defendants more than 60 days after the complaint was filed, plaintiff's action is deemed to have commenced the date on which service was effectuated. *Burroughs v. Shinn*, 2006 WL 305910, *4 (D.Or. Feb. 7, 2006). As a result, plaintiff's claims are time-barred by the statute of limitations. *See Foster*, 2007 WL 2138610 at *2-3 (dismissing state law claims under virtually identical circumstances). Defendants' motions are granted as to plaintiff's state claims.

  C.    Merits of Plaintiff's State Claims

Even assuming that they were not precluded by the OTCA, plaintiff's state claims fail as a matter of law. Plaintiff cannot prevail on his claims for false arrest, malicious prosecution, and false imprisonment for the reasons articulated in section II. Regarding plaintiff's remaining conversion claim, there is no evidence in the record that defendants exercised "dominion and control over a chattel which so seriously interferes with the right of another to control it that the actor may justly be required to pay the other the full value of the chattel." *Morrow v. First Interstate Bank, N.A.*, 118 Or.App. 164, 171, 847 P.2d 411 (1993). Specifically, plaintiff acknowledges that a report emanated from OSP confirming that the second firearm he had in his possession was stolen from the Josephine County Department of Corrections. Campbell Decl. Attach. 3, at 6. The Court cannot conclude that plaintiff had a right control chattel that was stolen from a law enforcement agency, even accepting that he had no knowledge of its status at the time of procurement. *See* FAC ¶ 26 ("[p]laintiff was returned two holsters and one firearm"; when he

"asked where the other gun was [he] was told that it had been returned to its 'rightful owner'");

*see also Outdoor Media Dimensions Inc. v. Oregon*, 150 Or.App. 106, 112, 945 P.2d 614, 618

(1997) (when property is lawfully taken, there is no conversion); *Mustola v. Toddy*, 253 Or. 658,

668, 456 P.2d 1004 (1969) (confining the scope of a conversion claim "to its narrowest possible

limits when a police officer in an emergency situation exercises control over the arrestee's

property").

Lastly, the removal of plaintiff's motorcycle from the scene of his arrest did not

constitute conversion. Such action was necessary to protect plaintiff's property interest, as his

motorcycle could neither be stored at Klamath County Jail nor left on the side of the highway.

Moreover, as Ellena repeatedly explained to plaintiff, his motorcycle was not being impounded;

it was being towed by a private company to be safely stored until plaintiff could reclaim it at a

later date. Campbell Decl. Ex A, at 1; Campbell Decl. Ex. B, at 8:16-17, 8:32. For these

additional reasons, defendants' motions are granted.

## CONCLUSION

Defendants' motions for summary judgment (docs. 71, 73) are GRANTED and this case

is DISMISSED.

IT IS SO ORDERED.

DATED this *18* day of May, 2015.

Mark D. Clarke
United States Magistrate Judge